I promise you that. It is a great pleasure for us all to be here for many years to come with Mr. Simon's journey with Ms. Marcella O'Hovier. Just when we opened with me, you kept me close to Mr. Brown's university. Because there are issues to address, and since no one who sided with the corporate leadership side expressed strong issues, I will take care of some first, and Ms. Marcella will address the sentencing issues. All of the sentencing cases have been run in writing to challenge the government's application standpoint in killing the president of the United States. Ms. O'Hoiver, as I mentioned in doing this report, I think it's important to recognize that cross-examination is an essential function, a requirement for a parent-child to allow the defendants to cross-examine and expose any biases and motivations for any instances of discrimination by the cross-examination. There's three cases that you got in this report. We're aware of the law in this issue. They continue to be a great part of the problem. It just seemed to me, at least speaking for myself, that most of what you were concerned about and everything excluded really was not particularly promotive, and to the extent that it was promotive, it was not permissible to do it, and it's too real a deal for undoing cross-examination, essentially. Zero harm, one estimate, court assistance, I really don't know. There is nothing that would allow this evidence to be used, and it's been a waste of time, more importantly, because there is no evidence that the defendants were committed to it, that they were shown as Asian-Christians, but we, as defendants, were not given the jury. And the government permitted Asian-Christians to carry on with their rights, but also to expose their child and support it, but not to be Asian-Christians in relationship with Mr. Corona in one instance. With the entirety, the bulk of the evidence, all of the conversations, the most important conversations, and the most key, important conversation, is the one of April 7th, where it was Mr. Corona who was identified as being Asian. Who was it he called out? Who said it was? So, Mr. Corona, that's what that would be like, setting up that conversation with the jury. Asian-Christians in the meantime was key, because it was a legal testimony that was presented to the jury, and Mr. Diaz and Mr. Garcia made an absence of all of these bulk statements. Well, not what specifically was excluded, but what's important, because there was an awful lot of evidence already about Christian subspires and impeachment evidence. It was frightening. And, you know, he talked about meeting with the state prosecutors. It's really clear that, of course, his goal was, you know, that he was trying to detach Corona and so on. So, a lot of that came out in testimony, and he talked about having exaggerated or lied to Corona, which also, you know, he said so much. What specifically was excluded that was so deeply incognito that it, you know, just produced an expression to deceive him? And, you know, he disagreed a number of times, too, and it all produced a question. Well, it's interesting, too, because it's a question about specifically what was excluded that was so incognito that it wasn't mentioned in your 2906 sentences. One of the DAs, Mr. Diaz, was the current member of the federal government for at least 20 years. That he specifically requested that the state pass a probation that is the exact opposite of what he testified in his trial, which he made clear at page 1957 of DOCIS. Is it true that he recommended that the state pass a probation? Yes, sir. I didn't recommend anything one way or the other. So, we have a TA in the State Senate, and he specifically recommended that his charges be received, Well, it's not interesting because it's too mystical in this case as it is in my constitutions. And so, I don't know what he was looking for. It's just that we don't know what he was looking for. If I stood up and said, What did you tell me? What do you know? It's not your sentence. What do you mean it's his sentence? I don't think that's what he said. But, as I mentioned, it was a little bit offer of sympathy for someone around him as a representation around him. His agent, or DA, or TA, just by text or e-mail, indicates that it would have been, in 2006, a different form of an argument where he was dismissed slowly and calmly, especially before a lot of controversy about probation. And, you know, he had Christians in Central New York, Central Carolina, because of the invention of DOCIS. So, here, he says, he says that, but then he allows misrepresent to the jurors. And he did not get a successful representation. So, he didn't get any right of statute. It's a broken wish list to the jury. But then, we are looking for the same support. That is, in part, a lie. That's a misstatement. That's a fraud. Let me ask you another question before I show you to your time. And that is, why isn't the exclusion of this piece of testimony, the emails, and so forth, how much of the evidence was found? And just, you know, it's, he just needs to do that. I'm not going to say this to myself. But, Mr. Jefferson, you recall the recordings of phone calls and so on and so forth. You recall those recordings of phone calls and so on and so forth. A lot on Corona, a few Christians, and in large part, the false statement of convictions was relied entirely on Christian students. Several statements during that period of the trial. There's no other evidence of that. If you look at the evidence without people around the Christians, there's no chance. So, it was not that it was exclusive in any way. It was that he was misrepresenting his biases and the jury was able to look at those biases on screen without understanding them. At the moment, I'm not conscious of the suspect, but 2.1, if you recall, the case was injured by Christians and Corona. Mr. Jefferson is saying that he admitted that he instructed Corona. Corona, 2.1, you know, the DNA assessment, which is an explanation for Corona. So, let's say, Washington's Corona was injured by Christians. And I'll just, I'll say this, but with respect to the evidence, Corona appears to be a Christian and not a Christian. So, Corona is Corona did not receive any promises. We know that all of our decisions weren't recorded. Christians did not make any promises. And, DeAndre just mentioned, he said, he specifically recognized probation in a report he wrote in 2019-18, which is what I'll refer to as a Schwarzer memo, where Christians said, and others, Jefferson asked, how does he think about this? He did not say that he could make any recommendation. So, it's not harmless, because it's a constitutional matter. And if the problem is anything, then harmless to us, because it's a constitutional matter. But if we find, you know, abuse of discretion, because these kind of factors can harm us. Well, it's reviewed in your own book. It's reviewed under the King D.C. Constitution, by a bunch of other regents and senators. And in that case, the government has to harness this. And you can't do this without a Christian city forever. And you can't do it on all state charters without Christians in it entirely. There's something you could say, which is that somehow, we already knew what it was. But, you know, it's, it doesn't, it doesn't make a lot of sense. What it does make sense was, harmless bias, and he said, say what you need to say, and accept what you need to say. And Christians, I'm sorry, I'm not even going to offer, perhaps, a Christian Christmas memo, something more relevant than Christmas. He did, and then he exaggerated a little bit. So, he was permitted to lie to the jury, and say, I made no recommendations. There's an old e-mail for saying that that's a lie, and it's someone else's statement. That's what he said to them. Correct? Correct. And it's here that, it may be hearsay, but it's from his lawyer, the CEO. The foreman that was familiar with the law in this case, it came along, extrinsic evidence of a contradiction, that the government grades, which are where they say they are, they can't let that go uncorrected. And when the defense responded to the verdict, it's like, okay, bring these records to the floor, it's for you on camera, but this is, of course, not an opportunity. So, what this e-mail was, the e-mail that we received, we couldn't bring your keys to proper, we couldn't bring you anyone else to proper, so we made our showroom, and I think that, by the CEO, and Abel, and Davis, that jury was entitled to know, that the people that the government was relying on, were lying to them. So, I'd like to ask you, how does this, what is it that you say, that gives you a safe haven? Yes, Jamie, do you want to address the center section issues? Jamie here? Yeah. To jump on that, I would appreciate your focusing on the email blind, because this question of what anyone ought to consider, and some potential disconnects in our own response as to which guidelines we should follow. The first thing I'm going to say on this email is that I just want you to talk about a couple of specific areas, and I believe that our panel did cover those. I'm going to move on before I flip through it, and I'll assist with that. I'm going to attempt to come up to you on requirements specifically for this context. The first is the sentencing guidelines. Okay. I totally see that. It's interesting. Thank you. I mean, there are some items that are sort of at the very end of the same discussion, but the guidelines provide a specific guideline in regards to how to access your seats, and it is going to be important to step back and come to you. And before I move on to that, I'm going to just name two of those discussed in a while. In all of the cases, I'm not sure if it's the same thing. There's just a problem. I believe the reasons are that the reason that we're moving to the 1.1, and specifically for this context, is content that was already covered under 2.3. And so, as I said, we already have a statute that incorporates conspiracy. We already have an appendix that says content included in conspiracy that leads to a criminal case, but it's already covered by 2.3. So, 2.3.1 is in the other provisions. So, we can go ahead and remove that. This is plus subcategories. And if you look at the beginning, you know, evolution of the subcategories, we're going to talk about this. We're going to be having, certainly, subcategories for every permutation of possible criminal conduct. And so, this is more for efficiency, more so than for, you know, the difference in relationship. I can ask you two follow-up questions about that. If we are faced with a contradiction in our home justice, and if it makes a difference, and I'll come back to that, what is your view of what we can or may do in that situation? Well, one thing that I think that it can do is, if you look at the US PC, I don't want to say it's on purses, but if you look at the US PC, I think it was something in the second grade, basically, they said, look, it was the USC, I think you can do a court of appropriations here, so it's kind of up to you three. Therefore, you can't complain. I don't think I can make my question clear. If our own precedents are in conflict, and one of them says the court did right, and one of them says the court did wrong, what are we supposed to do? And you hear, I'm sorry, if we can zero in on that. Don't make that decision to me. I'll call the court to decide. There is also a possibility, if you want, a final decision on whether or not the 2 years 1.1 complies, or the U.S. government also states that they believe that seeing those in red is a good idea. No, we can't do that. We have to follow up. If we have any truth in conflicting precedents, we don't speak to 21. If you find that there is conflicting precedents, I think that would be absolutely correct. Let me ask you this sort of follow-on question that I confided earlier, which is, does it make any difference, because in a court, on page 3139, in a sentence you stated specifically that either way, that is, whether 2X1.1 applies or not, the court would have come to the exact same conclusion about the sentence, because the courts are considered deeply under-calculated, and they're everything but applied, and they want to list the same standard factors under the statute. So, if you have a situation, potentially, where the courts say, well, it applies to 2X1.1, I may be wrong, but either way, this is the sentence I'm going to go with. Thank you. To follow up on what we're asking, of course, now there's a new phrase, and the song of angels has become a multi-word phrase. It's been very difficult for courts to adjust to something now, under any of the guidelines that are to be introduced in this case, and I don't think it's an issue to offer it to an individual in a court of appliance. For her to say that I would have doubled the sentence and guidelines for each individual defendant is something that's irrelevant in this trial, which leads into the point about the reason for the certainty requirement. If you look at this, this is not in this case, it's not based on public recordings, but I believe it's an issue that's not in this condition. Well, you have to grab the driver, but you don't expect to. You have to grab the driver. If you look at all those reasons asserting that there was some sort of appliance going on during the trial, the actual reasonable certainty as to under any of the conduct of the defendant was all conditioned on their discussions of the appliance and their advice. The problem is, is it a statement about a plan and it gets certain things come up, we may do this, but that's not necessarily the same thing as the defendant comes up and pushes, we're going to do this, this is how our plan is going to work, and this is what we're going to do. So, I guess this is true, because the document that is so frequently heard from the district courts and the other jurisdictions are in the same sort of question now. And I think there's even more of something that you should be thinking about. You were talking to a new straw poll in verses 2, 83 and 41, and you were short of three people, right? And, well, excuse me, I'm not a straw poll person, but I was also communicating with the sentencing commission, and the, I'm hearing most of the sentencing commission can communicate that in this instance 2-81.1 was approved to be used when college oriented compliance was, so, do we hear any that's a problem to the commission and especially the lawyers that have been described a few times in their circumstances that have been discussed by the solicitor on call to the commission has cases and other surveys that are based off of all of these cases that are surveys that are based off of compliance and they didn't correct some of the impediments because they didn't include the reasons of the impediments which shouldn't be in the petition speech over the petition but they're not going to be independent or private of the petition. We actually started in the words of the guidelines regarding the purpose of the petition. It may be reasoned purpose to address the petition as a very much specific issue of compliance and they may not be independent of the petition speech over speech over the petition speech over the petition but they may not an independent of the petition speech but they may not be independently independent of the petition speech but they may not be individual independent of  petition speech but they may not be   petition speech but they may not be independent of the petition speech but they may not be independent of the petition      be independent     they may not be independent or independent of the petition speech but they may not be an independent with the   dependent on the petition so that is the evidence of supported petition requirements the Petition Everyone is The Petition everyone is a petition and depends on a petition so the petition is a  that depends on so that the opinions of this petition are not solely the petition implication because it is not     is a petition that is not a petition which is not a petition that is not a petition that is not a petition which is not a petition that is not a petition that is not a petition that is not a petition which is not a petition that is not a           petition that is not a petition that is not a petition that is not a petition which I  is  is not a petition which is not a petition . Because it . . But this is a petition which is not a petition of a petition of a article
judges: Graber, Murguia, O'Connell